# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 25-257 |
| MICHAEL HOCHMAN | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Michael Hochman stands before this Court for sentencing for his download and collection of thousands of images and video of child sexual abuse material from the Internet. The parties have agreed to recommend a sentence of 15 years' incarceration pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), for the reasons outlined below.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1] At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also*

---

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

*Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

## I.    <u>PROCEDURAL BACKGROUND</u>

On June 16, 2025, the defendant was charged by Information with receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2). On June 30, 2025, the defendant waived prosecution by Indictment and entered a guilty plea to the Information as part of a written plea agreement with the Government pursuant to Fed. R. Crim. P. 11(c)(1)(B) in which the parties agreed to recommend to the Court a sentence of 15 years' incarceration.

Sentencing is set for December 5, 2025 before this Court.

## II.    <u>FACTS OF CONVICTION</u>[2]

In early June 2023 law enforcement authorities in the Eastern District of Missouri advised of a suspect living in the Eastern District of Pennsylvania, later identified as defendant Michael Hochman, who had been communicating with a minor girl who was living in St. Louis, MO. The victim was a 15-year-old girl who was in the ninth grade when the defendant came upon her on the anonymous messaging app Connected2.me. At the defendant's request the victim gave him her

---

[2] The facts recited in this sentencing memorandum are the same as those contained in the Government's Change of Plea memorandum, to which the defendant stipulated at the time of the entry of his guilty plea. These same facts are also recited in the Presentence Report (PSR), to which the defendant has filed no objection.

phone number so that they could talk via iMessage. Their messaging began on November 21, 2022, and continued for the next five days until the victim's mother discovered the conversations on November 25, 2022, and alerted law enforcement.

The ensuing investigation resulted in law enforcement obtaining the child's cell phone and tablet, upon which were discovered portions of the chat communications with the defendant. Their conversation was sexual in nature, and it was apparent from the chats that sexually explicit images and video were being exchanged, but they were no longer contained in the chat string on the victim's phone. Agents also obtained a series of search warrants for the defendant's online accounts, which ultimately led to the identification of the defendant as the person who was communicating with the child victim. Records obtained from TextNow (the main method of communication used by the defendant) led to the discovery of a Google account in the defendant's true name, which also led to the identification of the defendant at his true residence. IP log ins for the Google account during the same time period in which he was communicating with the victim resolved back to the defendant's true residence.

At the time of the criminal communications the defendant was 52 years of age and the victim was 15 years old. The defendant was also a convicted child sex offender, having been convicted in 2002 of Aggravated Indecent Liberties with a Child, in violation of K.S.A. 21-3504(a)(1), for which he was sentenced to a term of 55 months' imprisonment followed by 3 years of supervision.

A search warrant was obtained in this district for the defendant's residence and his person. The search warrant was executed in August 2024 by the Federal Bureau of Investigation. The defendant was home at the time of the execution of the search warrant but declined to give a

statement. In total, agents seized six electronic devices from the defendant's home, four of which were later found to contain child sexual abuse material (CSAM). He was not arrested at that time, pending a full forensic examination of his seized electronic devices. The forensic examination ultimately revealed a total of more than 1,900 images and more than 130 videos, all depicting CSAM, that is, primarily prepubescent children and toddlers being vaginally, orally, and anally raped and sexually assaulted by adult men. Some of the images also depict prepubescent children engaged in acts of masturbation and lasciviously exhibiting their genitals. **(Count One – receipt of child pornography).**[3] The dates of the CSAM in the defendant's collection shows that he was amassing these images and videos for at least the last 11 years, as early as May 1, 2014, and extending through at least August of 2023. For purposes of charging receipt, the following image was chosen:

> 3b3btb58791 – a one-minute video depicting a toddler girl who is naked from the waist up, holding an erect adult penis and inserting it in her mouth while also masturbating the penis. The adult male then masturbates his penis, holds the child's head and inserts his penis in her mouth while continuing to masturbate. This file was derived from Kik and has an associated date of August 30, 2023.

## III.    SENTENCING CALCULATION.

### A.    Statutory Maximum and Mandatory Minimum Penalties.

Receipt of Child Pornography, 18 U.S.C. § 2252(a)(2):  A statutory maximum of 20 years' incarceration, a mandatory minimum 5 year term of incarceration, a minimum 5-year term up to a lifetime of supervised release, a $250,000 fine, mandatory restitution of at least $3,000 per victim pursuant to 18 U.S.C. § 2259(b)(2)(B) and (c)(3), forfeiture, a $100 special assessment, and, if found not to be indigent, an additional assessment of up to $35,000 pursuant to 18 U.S.C. §

---

3 Though the defendant's collection included thousands of images and videos, the images of child victim from Missouri were not found in his collection. Nor were the child's images or video found in the returns from his online accounts. As a result, the charge to which the defendant is pleading guilty arises from his online criminal abuse and exploitation of children whose images were trafficked over the internet.

2259A(a)(2).[4]

**B.  Sentencing Guidelines Range Calculation.**

The Probation Office correctly calculated the defendant's advisory guideline range as

follows:

| Guideline Section | Level | PSR |
|---|---|---|
| Base offense level, USSG § 2G2.2(a)(2) | 22 | ¶ 38 |
| Material involved prepubescent child under the age of 12 years, USSG § 2G2.2(b)(2) | +2 | ¶ 39 |
| Crimes involved distribution of child pornography, USSG § 2G2.2(b)(3)(F) | +2 | ¶ 40 |
| Offense involved sadistic or masochistic abuse, § 2G2.2(b)(4) | +4 | ¶ 41 |
| Crimes involved use of a computer, § 2G2.2(b)(6) | +2 | ¶ 42 |
| Collection involved 1900 images and 130 videos of child pornography, in excess of the 600-image cap, § 2G2.2(b)(7)(D) | +5 | ¶ 43 |
| **Adjusted Total** | **37** | ¶ 47 |
| Less, 3 points for early acceptance of responsibility, § 3E1.1(a), (b) | -3 | ¶ 49, 50 |
| | | |
| **Final Offense Level** | **34** | ¶ 51 |
| **Category I Criminal History** | **I** | ¶ 55 |
| | | |
| **Final Guideline Range** | **180-188** | ¶ 106 |

---

4 At the time the defendant entered his guilty plea, if found to be indigent he was subject to an additional, mandatory $5,000 special assessment under the JVTA pursuant to 18 U.S.C. § 3014. On September 30, 2025, the statute expired. On November 12, 2025, H.R. 5371 was signed into law in the *Continuing Appropriations, Agriculture, Legislative Branch, Military Construction and Veterans Affairs, and Extensions Act, 2026.* Section 125 of Division A of this bill provides that 18 U.S.C. § 3014 is enacted as of the date of passage – November 12, 2025 – and "shall not apply retroactively." Thus, as the defendant's crimes predate the enactment on November 12, 2025, he is no longer subject to the monetary penalties in 18 U.S.C. § 3014.

IV.    **ANALYSIS.**

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

6

**Consideration of the 3553(a) Factors.**

**A.      The Nature and Circumstances of the Offenses**

Child sexual exploitation crimes are undisputedly grave offenses. As the Supreme Court

has explained, "[c]hild pornography harms and debases the most defenseless of our citizens.

Both the State and Federal Government have sought to suppress it for many years, only to find it

proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285,

307 (2008). Congress, too, has explained the difficulties in successfully combating the

"immense" problem of child pornography and the "rapidly-growing market" for such materials,

which is fueled by new technologies that were largely unavailable when the Sentencing

Guidelines were first promulgated. *See S. Rep. No. 108-2 (2003).*

Indeed, Congress has repeatedly expressed its dismay about the "excessive leniency" of

federal sentences, *see H. Rep. No. 108-66; S. Rep. No. 104-358*, especially in light of the

continuing harm caused to the children appearing in such materials, as well as the inflammatory

effect it has on the "desires of child molesters, pedophiles, and child pornographers" which

results in a robust and growing market for child pornography and therefore increased abuse of

innocent children.  *See Child Pornography Prevention Act of 1996,* Pub. L. No. 104-208, § 121,

110 Stat. 3009, 3009-26, 27 (1996), codified at 18 U.S.C. § 2251 note; *United States v.

MacEwan*, 445 F.3d 249, 250 (3d Cir. 2006); *United States v. Norris*, 159 F.3d 926, 929 (5th Cir.

1998) ("[T]he victimization of the children involved does not end when the pornographer's

camera is put away.").

Here, there can be no question that the defendant engaged in very serious crimes. He was

well immersed in the underworld of child pornography, actively seeking out images of some of

the most horrific sexual abuse of children. His collection of child pornography was enormous – more than 1,900 images and 130 videos amassed over more than nine years and dating back to 2014. The Third Circuit in *United States v. Haggerty*, 107 F.4th 175 (3d Cir. 2024), held that every second of video that contains child pornography is equivalent to 24 images – which renders this defendant's collection equivalent to tens of thousands of images of the most depraved child sexual abuse, including sadistic and masochistic abuse inflicted upon the tiniest of victims. This defendant, and others like him who share in the world of child pornography, perpetuate the harm to the victims depicted in these images by creating demand and fueling this market, thereby leading to further production of images. The children are victimized every time the images are downloaded, purchased or viewed by another person. Given the scope of the Internet, their exploitation is ongoing and relentless, all for the sexually deviant "pleasure" of people like this defendant.

The Supreme Court has clearly recognized the harm to these children, noting that the "materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *New York v. Ferber*, 458 U.S. 747, 759 (1982); *Osborne v. Ohio*, 495 U.S. 103, 111 (1990) ("The pornography's continued existence causes the child victims continuing harm by haunting the children for years to come."). The pain caused to the children victimized by this defendant is well articulated in the letters appended to the Government's sentencing memorandum. *See* Exhibits A to G. Their letters detail the continuing harm they endure from having their images traded over and over again, with no end to their torture. The defendant's role in the continued victimization of these children is consequential, and the crimes he committed against these young victims have earned him the recommended

sentence of 15 years' imprisonment. §3553(a)(1).

So, too, does the defendant's victimization of the young girl he preyed upon and had personal contact with over the internet. The defendant knew this child's age from the outset of their communications, and spent many hours befriending and grooming her as part of his plan to sexually abuse and exploit her. He sexualized her by sending pornographic videos of himself masturbating. He warned her repeatedly to delete their texts, videos, and images, and directed her not to tell anyone of their communications. Though they corresponded only five days before the child's mother found the chats and reported it to police, by then the damage had been done – not only did he send numerous sexual images to this child, he also manipulated her into sending him sexual images of herself as well. The defendant's victimization of this child, and the methods he chose to sexually exploit her, warrant severe punishment. § 3553(a)(1).

### B.    The history and characteristics of the defendant

The history and characteristics of this defendant also favor the 15-year sentence recommended by the parties. The defendant comes before this Court already having been convicted of child sex offenses. In 2002 the defendant was convicted of Aggravated Indecent Liberties with a Child in Kansas, for which he was sentenced to 55 months' imprisonment followed by 36 months of supervision. The underlying circumstances of his conviction are frighteningly similar to the crimes he committed against the minor child in Missouri in this case – he communicated online with a 13-year old girl, manipulated her into producing sexually explicit images, and ultimately traveled to Kansas and engaged in sex on multiple occasions with this child. *See* PSR ¶ 53.

As a result of his conviction the defendant was required to abide by Court supervision for

9

three years, register as a sex offender under Megan's Law, and undergo sex offender treatment, which he completed "successfully." *Id.* Nothing served to deter him from continuing to involve himself child exploitation crimes. The forensic examination of his seized devices and his online activity confirmed that the defendant spent countless hours on his digital equipment for more than nine years, amassing an enormous collection of depraved and sadistic child pornography which fueled his sexual interest and culminated in him victimizing the child in Missouri. The recommended 15-year prison term is warranted and necessary to address the defendant's repeated victimization of the most vulnerable in our society. § 3553(a)(1).

        **C.**      **The seriousness of the offense, respect for the law, and just punishment.**

A significant term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2). The crimes committed by the defendant were not an isolated occurrence, but part of a pattern of sexually exploitative behavior toward children by the defendant for so many years that it became a way of life for him.

Morevoer, in terms of his respect for the law, most recently the defendant submitted several letters of support to this Court as part of his sentencing memorandum in ECF No. 14. He obtained these letters under false pretenses, by advising each person that he was applying for a "grant or honor" and that he needed their letters of support for his application. He obtained these letters in April 2025 - after the search warrant had been executed at his home, and at a time when he knew that child pornography charges would be forthcoming - yet he disclosed none of that to his supporters. The Information was then filed in this case which charged him with receipt of child pornography, he entered a plea of guilty, and sentencing was set for October 2025. He had

at least six months to contemplate what to do with the letters of support – and in the end, he submitted them to this Court without any mention whatsoever as to how they had been falsely obtained. This is especially significant because each person advised that had they known of the defendant's true purpose for obtaining their letters, that is, to assist in his sentencing for his second child sex abuse conviction, they would never have written letters or offered their support.

After this deception was discovered the Government authored a letter to advise the Court. The defendant then publicly filed a response to the letter on the docket, essentially doubling down and arguing that the content of the letters submitted was truthful, denying that the authors of the letters were duped into writing the letters of support (despite each person advising to the contrary), and attacking them for now advising authorities of the truth – that they would not have written letters of support had the defendant simply told them the truth. ECF No. 18. In so doing he fails to recognize the import of his actions: regardless of whether it was true that he was a good employee or did charitable works, the fact that he obtained letters of support under false pretenses, submitted them to this Court, omitted all information as to how he had obtained them, and then doubled down and attacked his supporters for withdrawing their recommendations when they learned the truth, all demonstrates his lack of judgment, lack of respect for the law, and lack of reverence for this Court.

That being said, the government maintains that the 15-year recommended sentence addresses each of these §3553(a)(2)(A) factors, and remains the appropriate resolution of this case. His actions demonstrate, however, that a long term of supervised release is necessary to ensure that he remains in compliance with the Court's directives. The government recommends a term of at least 20 years of supervision.

###### D.    Deterrence.

Deterrence is also one of the factors driving the sentence in this case, and a sentence of 15 years' imprisonment would address this concern. The recommended sentence will demonstrate to this defendant – and any others contemplating involving themselves in child exploitation - that this type of criminal exploitation will not be tolerated by society, and will result in a minimum of decades in federal prison. The 15-year sentence – and 20 years of supervised release - will give notice that the sexual abuse and exploitation of children has serious and significant consequences.

###### E.    Other considerations.

There is no need in this case to adjust the sentence further than that which is recommended in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). The defendant is educated, has maintained steady employment throughout his lifetime, and is not in need of any treatment other than sex offender treatment. His custodial sentence should not be mitigated in any way to address any of these issues. Any treatment or training can be accomplished during the long term of supervised release that is recommended by the government and which is required to be imposed for these crimes.

###### F.    The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Unlike most sex offenders who come into federal custody as first time offenders, this defendant stands before the Court as a convicted child sex offender who was also a registered sex offender at the time that he committed these crimes. To address disparity, this Court is permitted to consider the sentences in this district, but is required to address national uniformity. *United*

*States v. Orlando*, 2024 WL 3384919 (3d Cir. 2024) (unreported). The data available, however, is dated and contains an analysis of sentences for first time child sex offenders – meaning that those with previous child sex convictions which served as predicates to enhance the sentence on the current child sex offense were not included in the report. *See USSG Federal Sentencing of Child Pornography: Non-Production Offenses* June 2021.

The recommended term of 15 years' incarceration is the mandatory minimum term that this Court is required to impose, and is also within the calculated Guideline range tailored to address the specific circumstances of this defendant's crimes.

### G.    Restitution.

Restitution is mandatory for these child exploitation crimes, with the Court required to order a minimum of $3,000 per child. 18 U.S.C. §§ 2259(b)(2)(B), (b)(3). The defendant has agreed to make restitution, and the parties have reached a tentative agreement as to the specific amounts. A finalized agreement is expected before the hearing, and the parties will apprise the Court in advance as well as provide a restitution summary and supporting documentation for each of the claims in advance of the hearing.

V.    <u>**CONCLUSION**</u>

Therefore, for the foregoing reasons, the government requests that this Court accept the

15-year term of incarceration recommended by the parties, followed by at least 20 years of

supervised release.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s Michelle Rotella*
MICHELLE ROTELLA
Assistant United States Attorney

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this date I caused a true and correct copy of the foregoing

Government's Sentencing Memorandum to be served by e-mail and the electronic filing system

upon counsel for defendant:

Michael Diamondstein, Esquire
Counsel for defendant
mjd@michaeldiamondstein.com


*/s Michelle Rotella*
MICHELLE ROTELLA
Assistant United States Attorney


Date:   <u>November 21, 2025.</u>